**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IVAN CAPETILLO, JR., | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 14-02715 |
| PRIMECARE MEDICAL, INC.; | : | |
| LEHIGH COUNTY PRISON; | : | |
| EDWARD SWEENEY (Director of | : | |
| Corrections); | : | |
| SGT. DAWSON; | : | |
| C.O. CHAD PROGRANCZ; | : | |
| C.O. ALEXANDER WATTY; | : | |
| C.O. JOHN DENTLY; | : | |
| MOLLY LONGACRE, P.A.; | : | |
| KATHERINE BRANCH, LPN; | : | |
| NATALIE TAVARES, LPN; and | : | |
| MARYANN GRUBER, RN, | : | |
| Defendants | : | |

**MEMORANDUM**

YOHN, J.                                                    October 22, 2014

Ivan Capetillo, Jr., a prisoner formerly incarcerated at Lehigh County Prison, filed a *pro se* complaint under 42 U.S.C. § 1983 against the prison, its director of corrections, four correctional officers, the prison's medical services provider, and four members of the prison's medical staff. Capetillo claims that defendants violated his Eighth Amendment rights in denying him treatment for hyperthyroidism and Graves' disease for six days in February 2014, as well as by continuing to provide him with ineffective medical care since that time. Defendants have moved to dismiss the complaint, arguing that Capetillo has failed to state a constitutional claim by showing deliberate indifference to a serious medical condition.[1] For the foregoing reasons, I will grant defendants' motion to dismiss the complaint in part and deny it in part.

---

[1] Plaintiff filed a "Motion to Show Cause to Proceed with Civil Action" (Doc. No. 13), which the court interprets as a response to the motion to dismiss.

I.      **Factual Background and Procedural History**[2]

On February 19, 2014, Capetillo was transferred from the Federal Detention Center ("FDC") in Philadelphia, Pennsylvania to Lehigh County Prison ("LCP") in Allentown, Pennsylvania.  Upon arrival, Capetillo informed the medical staff that he required daily medication for his hyperthyroidism and Graves' disease.  Capetillo was told that he could not receive his medication until PrimeCare Medical, Inc. ("PrimeCare"), LCP's medical services provider, verified his medical records from the FDC.

Two days later, on February 21, Capetillo informed nurse Natalie Tavares that he had not yet received his medication and requested treatment; that request was denied.  On the following day, February 22, Capetillo submitted a sick call slip and informed correctional officer Alexander Watty that he had still not received his medicine.  Capetillo was told that PrimeCare was waiting for confirmation from the FDC.  At that point, having not received medication for three days, Capetillo filed a formal grievance with the prison.  On February 23, Capetillo asked for medication from nurse Katherine Branch and correctional officer John Dently, noting that he was experiencing a fast and hard heartbeat.  That request was denied.  On February 24, Capetillo submitted a second sick call slip and requested medicine from nurse Maryann Gruber and correctional officer Chad Prograncz.  After being denied again, Capetillo asked to speak with the supervisor on duty, Sgt. Dawson, who likewise rebuffed Capetillo's request for treatment.

On February 25, Capetillo was seen by physician assistant Molly Longacre, who prescribed Capetillo "generic versions" of his medications.[3]  On March 14, 2014, Capetillo's formal grievance was denied.  That denial states:

---

[2] This account accepts as true all factual allegations made in the complaint (Doc. No. 3) and exhibits to the complaint.  *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

> You[] were transferred from Philadelphia on [February 19, 2014] without a medical transfer sheet. When Philadelphia authorities were contacted, [they] stated they had no record of meds. We started meds on [February 25, 2014] after you were [seen] by our doctor. We still have not received [a] transfer sheet from Philadelphia after attempts were made.

Compl. 12. Capetillo, however, found the generic medication to be ineffective and submitted a third sick call slip to that effect on March 25, 2014. Capetillo was seen that same day by Longacre, who did not change his prescription. At some point thereafter,[4] Capetillo appealed the denial of his grievance, arguing that the generic medication was not working. Capetillo claims that, as a result of the lack of medication for six days and ineffectiveness of the generic medication he received since then, he has suffered from bugged eyes, sweating, elevated heart rate, insomnia, and hunger, among other thyroid-related symptoms.

On April 14, 2014, Capetillo filed this complaint, seeking compensatory damages and injunctive relief. On July 2, 2014, defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Capetillo filed a response opposing the motion to dismiss on July 12, 2014.

## II.     Standard of Review

In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009). "This 'plausibility' determination will be 'a context-specific task that requires the

---

[3] Capetillo refers to these medications as "Methemazol" and "Propanolo." Compl. 10. Methimazole is a prescription drug "used to treat hyperthyroidism." *See* U.S. National Library of Medicine, *Methimazole,* MedlinePlus (Sept. 1, 2010), http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682464.html. Propranolol, a beta blocker, is prescribed to address "the adrenergic symptoms of hyperthyroidism such as tremor, palpitations, heat intolerance, and nervousness." *See* Jeri R. Reid & Stephen F. Wheeler, *Hyperthyroidism: Diagnosis and Treatment,* 72 Am. Fam. Physician 623 (2005), *available at* http://www.aafp.org/afp/2005/0815/p623.html.

[4] Capetillo's appeal form is unsigned and undated but references the March 25 meeting with Longacre. Compl. 12.

reviewing court to draw on its judicial experience and common sense.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  The issue is "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  *Bell Atlantic v. Twombly,* 550 U.S. 544, 563 n.8 (2007) (quoting *Scheuer v. Rhoades,* 416 U.S. 232, 236 (1974)).

In conducting this review, a court must accept all "well-pleaded" facts in the complaint as true.  *Fowler,* 578 F.3d at 211.  This assumption of truth does not, however, apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal,* 556 U.S. at 678.  At the same time, the pleadings of *pro se* plaintiffs must be "liberally construed."  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (internal quotation marks omitted)).

## III.    Discussion

Capetillo claims that defendants have violated the Eighth Amendment's prohibition against cruel and unusual punishment in two ways: by failing to provide him with any medication for hyperthyroidism and Graves' disease from February 19 to February 25, 2014 (the "denial-of-care" claim), and thereafter by providing only generic medication until this lawsuit began (the "quality-of-care" claim).  Defendants themselves also fall into categories: the medical defendants, physician assistant Longacre and nurses Branch, Tavares, and Gruber; correctional

defendants, Sergeant Dawson and correctional officers Prograncz, Watty, and Dently; and the supervisory officials and entities (defendants Sweeney, PrimeCare, and LCP).

Capetillo has brought suit against all of these defendants under 42 U.S.C. § 1983, which provides for the imposition of liability on any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or laws of the United States.  The statute is not itself a source of substantive rights, but instead provides "a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor,* 490 U.S. 386, 393-94 (1989) (quotation marks omitted).  Because prisoners have a right to medical care under the Eighth Amendment, and because inmates must rely on prison officials for such care, denial of treatment can result in pain and suffering that rises to the level of a constitutional violation. *Estelle*, 429 U.S. at 103.  However, the Supreme Court has made clear that failure to provide adequate medical care is a violation of the Eighth Amendment only when it results from "deliberate indifference to serious medical needs."  *Id.* at 106.  Thus, to state a claim under the Eighth Amendment here, Capetillo needs to show first that his medical needs were serious and second that defendants were deliberately indifferent to those needs.

Consequently, Capetillo's quality-of-care claim can be dismissed at the outset against all defendants.  Even assuming *arguendo* that Capetillo's medical needs are serious, the decision to prescribe generic over brand name medication does not amount to deliberate indifference, but rather is "a classic example of a matter for medical judgment" that "does not represent cruel and unusual punishment."  *Id.* at 107.  A prison doctor's decision, based on his or her medical judgment, to prescribe a prisoner one drug over another simply cannot give rise to an Eighth Amendment claim.  *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *see also Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) ("Nor

does mere disagreement as to the proper medical treatment support a claim of an [E]ighth [A]mendment violation.").[5]  The denial-of-care claim, on the other hand, bears closer scrutiny.

### A.      Serious Medical Needs

For the purposes of the Eighth Amendment, a medical need is considered serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Lanzaro*, 834 F.2d at 347 (citation and quotation marks omitted).  Here, defendants have not challenged the seriousness of Capetillo's hyperthyroidism and Graves' disease.  Moreover, defendant Longacre in fact provided Capetillo with treatment as a result of her examining him on February 25, 2014.[6] Because the issue does not appear to be either in contention or in doubt, I assume for purposes of this motion that Capetillo's medical needs are serious enough to satisfy the first prong of the *Estelle* test.  *Cf. Smith v. O'Boyle*, 251 F. App'x 87, 89 (3d Cir. 2007) (per curiam) (nonprecedential) (determining that a diagnosis of hyperthyroidism and kidney stones constitutes "a serious medical need").

### B.      Deliberate Indifference

The Third Circuit has held that in a § 1983 denial-of-care claim, "Where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest."  *Lanzaro*, 834 F.2d at 346 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.

---

[5] This rule is especially clear where, as here, the doctor's choice is between prescribing the generic or brand-name version of the same medication, since "[g]eneric drugs are required to have the same active ingredient, strength, dosage form, and route of administration as the brand name product."  *See* FDA, *Facts about Generic Drugs* (Sept. 19, 2012), http://1.usa.gov/1vEx6EG.

[6] While Longacre is a physician assistant ("PA"), not a physician, PAs are "nationally certified and state-licensed medical professional[s]" who "practice medicine on healthcare teams with physicians and other providers" and who can "prescribe medication in all 50 states, the District of Columbia and all U.S. territories, with the exception of Puerto Rico."  *See* American Academy of Physician Assistants, *What is a PA?* (Oct. 22, 2014), http://www.aapa.org/twocolumnmain.aspx?id=290.

1976)); *see also Estelle*, 429 U.S. at 104-05 (deliberate indifference is found where defendants "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed.").  The scienter requirement for deliberate indifference in an Eighth Amendment context is subjective recklessness: the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety; the [defendant] must be both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

### 1.    Claim Against Defendant Longacre

According to the complaint, Capetillo submitted sick call slips on February 22 and February 24, 2014, then was seen by Longacre on February 25, 2014.  At that time, Longacre prescribed medication to treat Capetillo's hyperthyroidism and Graves' disease.  In other words—by Capetillo's own account—Longacre had nothing to do with his lack of medication from February 19 to February 25, 2014.  Quite the opposite: Longacre is alleged to have acted promptly to address his medical needs.  Capetillo has therefore failed to state a claim that Longacre deprived him of his Eight Amendment rights.  And without an underlying deprivation of rights, Longacre cannot be held liable under § 1983.  Accordingly, I will grant defendants' motions to dismiss the complaint, with prejudice, with respect to all claims against Longacre.

### 2.    Claim Against Defendants Dawson, Prograncz, Watty, and Dently

Between February 19 and February 25, 2014, Capetillo variously sought medication from correctional officers Dawson, Prograncz, Watty, and Dently—all of whom rebuffed his requests. But the request to Dently was made while he was accompanying nurse Branch.  Likewise, the requests to Watty, Prograncz, and Dawson were made shortly after Capetillo had asked nurses Tavares and Gruber for medicine.  The Third Circuit has held that "absent a reason to believe (or

actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Likewise, where a prisoner has at least been seen by a nurse, an officer can know that the prisoner has "receiv[ed] a minimal measure of medical attention." *Id.* at 237. Moreover, as in *Spruill*, the plaintiff here "does not allege that his condition was so dire and obvious that [a correctional officer's] failure to summon immediate medical attention . . . (and to instead let the sick call process run its course) amounted to deliberate indifference." *Id.* Therefore, "[t]he facts as [plaintiff] himself describes them simply do not amount to . . . 'deny[ing] reasonable requests for medical treatment . . . expos[ing] the inmate to undue suffering' or 'knowledge of the need for medical care' coupled with an 'intentional refusal to provide that care.'" *Id.* (quoting *Lanzaro*, 834 F.2d at 346). Because plaintiff has not shown that the correctional defendants were deliberately indifferent, plaintiff has failed to state an Eighth Amendment claim against them. I will accordingly grant the motion to dismiss the complaint with respect to claims against Dawson, Prograncz, Watty, and Dently.

### 3.    Claim Against Defendants Tavares, Branch, and Gruber

The Third Circuit has identified two scenarios in which failure to provide a prisoner with medical care can rise to the level of deliberate indifference and satisfy the *Estelle* test: "(1) [w]here prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, and (2) where knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care.'" *Spruill*, 372 F.3d at 235 (citations and quotation marks omitted). Here, Capetillo alleges that he made his medical needs known to and requested his medication from nurse

Tavares on February 21, nurse Branch on February 23, and nurse Gruber on February 24.  None of the three defendants provided medication to Capetillo.  Capetillo further asserts that, at least as of the time of filing, he continues to suffer from symptoms of hyperthyroidism and Graves' disease, including bugged eyes, elevated heart rate, and insomnia.

Defendants respond that Capetillo's allegations "amount to nothing more than a difference of opinion as to whether the proper medical treatment was rendered, not deliberate indifference."  Defs.' Mot. 4.  This is certainly the case regarding Capetillo's quality-of-care claim.  *See supra*.  But it is off the mark regarding plaintiff's denial-of-care claim.  Defendants have not argued that Capetillo was denied medication out of any considered medical judgment.  Rather, they themselves have suggested that Capetillo was denied care for six days after entering LCP because his "medication history" had not yet been "verified" by the FDC.  Defs.' Mot. 3.  The Third Circuit instructs that "if necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out."  *Lanzaro*, 834 F.2d at 346 (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)).  I therefore conclude that Capetillo has plausibly alleged that—Longacre aside—the medical defendants for a six day period were deliberately indifferent to his serious medical needs, in that these defendants denied his reasonable request for medical care for non-medical reasons, and that denial exposed him to the threat of tangible residual injury.  I will therefore deny defendants' motion to dismiss the complaint with respect to the denial-of-care claim against defendants Tavares, Branch, and Gruber.

### 4.    Claim Against Defendant Sweeney

As defendants correctly note, Capetillo's complaint does not mention Sweeney by name. In his response, however, Capetillo claims that Sweeney is "responsible for the actions of his

subordinates and contractors, to follow policies and procedures" by virtue of his position as director of corrections.  Pl.'s Reply 13.  Specifically, Capetillo alleges that Sweeney is responsible for defendant Dawson's refusal to provide him with medication on February 24, 2014.  Capetillo further asserts that this denial violated prison policies regarding the provision of medical care to inmates.

The Third Circuit recently took the opportunity to clarify the standards for supervisory liability with regard to Eighth Amendment deprivation of care claims in *Barkes v. First Correctional Medical, Inc.*, 12-3074, 2014 WL 4401051 (3d Cir. Sept. 5, 2014).  There, the court held that the four-part test set out in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989), continues to provide the best method for determining subjective deliberate indifference on the part of a supervisor in such cases.  As the court summarized the *Sample* test:

> The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Barkes*, 2014 WL 4401051 at *7.  Here, in terms of a supervisory policy that Sweeney allegedly failed to employ, Capetillo points to LCP's Inmate Guidelines, Article 22, Sections C, E, and G.  *See* Pl.'s Reply 13.

An evaluation of Capetillo's claim against Sweeney must therefore begin with the text of the policies he cites.  As such, LCP Inmate Guidelines, Article 22, Section C provides:

> If you are housed [in one of LCP's segregated units] and want to be scheduled for sick call, you need to report your medical problem to the medical personnel conducting segregation rounds. The medical personnel will collect the information from you during daily rounds.

10

*See* Compl. 15.  Section E provides:

> If you have an emergency medical problem, you should contact
> correctional personnel immediately.

*See id.*  And Section G provides:

> If you have any questions about the medical services provided
> within the facility, or how to properly contact the appropriate
> person, please refer your questions to your Housing Unit Officer.

*See id.* at 16.  Capetillo asserts that Dawson violated these policies by "ignoring and waiving

[him] off with his hands" when Capetillo asked for medication, having earlier been denied

medicine by Gruber and Prograncz.  Pl.'s Reply 13.  But even taking all of Capetillo's factual

allegations as true, this conduct does not amount to a violation of the three sections quoted

above—nor does it violate any of the policies that Capetillo attached as an exhibit to his

complaint.  *See* Compl. 14-19.  Thus, before even reaching the 4-part *Sample* test set out above,

Capetillo's claim fails to meet the threshold burden of "identify[ing] a supervisory policy or

practice that [Sweeney] failed to employ."  *Barkes*, 2014 WL 4401051 at *7.

Moreover, Capetillo does not allege that Sweeney had any role in supervising the policy

that—if it exists—is actually at issue here: the rule that a transferred inmate cannot receive

medication until his medical records are received from the prior prison.  Even assuming that such

a policy "create[s] an unreasonable risk of a constitutional violation," *id.*, Capetillo has not

plausibly alleged that Sweeney himself was aware of any such policy, let alone that he was

deliberately indifferent to it.  Thus, under the standards for supervisory liability provided in

*Barkes*, Capetillo has failed to state a claim against Sweeney for which relief can be granted.

Accordingly, I will dismiss the complaint with respect to defendant Sweeney.

###### 5.        Claim Against Defendant LCP

Where a prisoner sues a prison under § 1983 alleging a deprivation of Eighth Amendment rights, "the stringent requirements for municipal liability apply: [plaintiff] must allege that a 'policy or custom' of the Jail was the 'moving force' behind a violation of his Eighth Amendment rights." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002). Moreover, where plaintiff "alleges a constitutional violation was committed by the Jail's employees, rather than by the Jail itself, to satisfy the 'moving force' requirement he must allege that the Jail was deliberately indifferent to the possibility that such a violation would occur." *Id.* at 107-08.

Here, Capetillo has not alleged that his six-day lack of medication upon entering LCP resulted from a policy or custom of LCP.  Indeed, the prison guidelines that Capetillo attached to the complaint state that "[m]edical staff will evaluate you during the booking process" and that a "reception screening examination will be conducted."  Compl. 15.  Capetillo counters that LCP "employs PrimeCare Medical, Inc. et al., and therefore is responsible for their actions."  Pl.'s Reply 13-14.  But Capetillo does not allege that LCP knew about any policy on the part of PrimeCare or its staff to deny medication until a prisoner's medical history is received, let alone that LCP "was deliberately indifferent to the possibility that [an Eighth Amendment] violation would occur" as a result of any such policy.  *Grayson*, 293 F.3d at 107-08.  "Nor does [plaintiff] allege that other inmates suffered similar deprivations of medical attention that might establish a custom."  *Id.* at 108.  By not alleging these facts, plaintiff has failed to state a cognizable § 1983 claim against LCP.  I will therefore grant defendants' motion to dismiss the complaint with respect to Lehigh County Prison.

### 6.    Claim Against Defendant PrimeCare

According to the complaint, Capetillo informed the medical staff during his examination upon entering LCP on February 19, 2014 that he required medication for hyperthyroidism and Graves' disease, and was told that "PrimeCare ha[d] to verify [his] medical records from FDC Philly" before he could receive treatment.  Compl. 3.  On February 21, when Capetillo asked defendant Watty for medication, Watty made an inquiry with the medical staff and was told that "PrimeCare [was] still waiting on FDC Philly to confirm meds."  *Id.*  Defendants assert that Capetillo has made "no allegations concerning policies and procedures concerning the provision of medical care at the Lehigh County Jail."  Defs.' Mot. 3.  But these facts, taken as true, suffice to plausibly allege that PrimeCare maintained a policy or procedure of providing medication to a transferred inmate only after receiving that inmate's medical records.  Moreover, the denial of Capetillo's grievance implicitly confirms the existence of this policy, stating that Capetillo was initially denied medication because he entered LCP "without a medical transfer sheet" and because FDC Philadelphia "stated they had no record of meds" for Capetillo.  *See* Compl. 12. Thus, Capetillo's claim against PrimeCare is not one of vicarious liability, but rather is based on PrimeCare's own policy or practice—as allegedly carried out by Tavares, Gruber, and Branch— of refusing to provide medication to transferred inmates before receiving their medical history.

As a consequence, the resolution of the claim at this stage is squarely controlled by *Natale v. Camden County Corrections Facility*, 318 F.3d 575 (3d Cir. 2003).  In that case, the Third Circuit considered a detainee's suit under § 1983 alleging denial of care by Prison Health Services ("PHS"), an outside provider of prison medical services.[7]  The detainee informed PHS

---

[7] Natale's claim arose under the Fourteenth Amendment, as he was detained pre-trial and Eighth Amendment protections only apply post-conviction.  But the Third Circuit uses the same rubric to evaluate either claim, so the court's reasoning is equally applicable here.  *See Natale*, 318 F.3d at 581 ("[W]e have found no reason to apply a different standard than that set forth in *Estelle* (pertaining to prisoners' claims of inadequate medical care under the

upon entering prison that he required insulin for his diabetes, but waited twenty-one hours before receiving his first dosage.  Two days later, the detainee suffered a stroke.  Evidence suggested that "PHS's 'policy' was that a doctor would see inmates within 72 hours, but that there was no practice in place to accommodate inmates with more immediate medication needs."  *Id.* at 583.  Defendants correctly cite *Natale* for the proposition that a provider like PHS "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability."  *Id.*  But they elide the fact that the Third Circuit also found PHS could be held liable if plaintiffs showed "that there was a relevant PHS policy or custom, and that the policy caused the constitutional violation they allege."  *Id.* at 584.  In *Natale*, evidence suggested that PHS had a policy of screening inmates upon intake and recording medication needs, but not providing medication without a doctor's permission despite having "no requirement that a doctor see an inmate during the first 72 hours of incarceration and no one [who] was charged with determining whether an inmate should be seen by a doctor earlier in the 72–hour period."  *Id.* at 584-85.  The court reasoned that, "[a]s a result, there was no policy ensuring that an inmate having need of medication for a serious medical condition would be given that medication during the first 72 hours of his incarceration."  *Id.* at 585.  The Third Circuit thus held that "[a] reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs."  *Id.*

Here, Capetillo has plausibly alleged that PrimeCare maintains a policy or practice of refusing to provide medication to transferred inmates until their medical history has been verified—potentially an indefinite period of time, given that PrimeCare had not received records

---

Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment.").

from FDC nearly a month after Capetillo arrived—and that this policy or practice led to his being denied medical care for six days.  Indeed, the denial of Capetillo's grievance suggests that Capetillo received medication on February 25, 2014, only after defendant Longacre recognized the need for treatment and disregarded PrimeCare's policy of waiting for records.  *See* Compl. 12.  Capetillo has therefore plausibly alleged that, like PHS in *Natale*, PrimeCare here has failed to "establish a policy to address the immediate medication needs of inmates with serious medical conditions" and that such a failure "creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs."  *Natale*, 318 F.3d at 585.  Accordingly, I will deny defendants' motion to dismiss the complaint with respect to the denial-of-care claim against PrimeCare Medical, Inc.

## IV.   Conclusion

For the reasons set forth above, I will grant defendants' motion in part and deny it in part. The quality-of care claim will be dismissed against all defendants.  The denial-of-care claim will be dismissed against defendants Longacre, Dawson, Prograncz, Watty, Dently, Sweeney, and Lehigh County Prison.  The motion to dismiss will be denied with respect to the denial-of-care claim against defendants Tavares, Branch, Gruber, and PrimeCare Medical, Inc.  An appropriate order follows.